IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **GLADYS C. HESS** *et al.*, | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-16-2789 |
| **GEORGE J. KAFKA, JR.**, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

*I. Background*

This case is the second-filed case between these parties.  In the first-filed case, Civ. No. JKB-16-1757 (D. Md.), filed in this Court on May 31, 2016, George J. Kafka, Jr., brought a declaratory judgment action against Gladys C. Hess, requesting the Court declare the rights of the parties in reference to a property located in Baltimore County, Maryland (the "Property"), for which Dorothy J. Smith, who was Kafka's mother and Hess's sister, executed two deeds, one in 2009 and the second in 2011.  (16-1757 Compl., ECF No. 1.)  In the 2009 deed, Smith reserved a life estate for herself in the Property and conveyed the remainder interest to Kafka.  (*Id.* ¶ 9.)  This deed was recorded on April 30, 2010.  (*Id.*)  Over two years after Smith executed this deed, Smith executed another deed on the same property; in this deed, she again reserved a life interest to herself but purportedly conveyed the remainder interest to Hess.  (*Id.* ¶ 10.)  This deed was recorded on August 31, 2011.  (*Id.* Ex. 2.)  In addition to determining ownership of the Property, Kafka requested the Court to declare he is not indebted to Hess for any expenses related to the Property.  (*Id.* ¶¶ 19-20.)

In the instant case, which Hess filed in the Circuit Court for Baltimore County on July 22, 2016—the same day that she filed a motion to dismiss in 16-1757—Hess (in both her individual capacity and her capacity as personal representative of Smith's estate) sued Kafka in four counts: I – Hess asked the Court to declare the 2009 deed ("Kafka Deed") void and that she has right, title, and interest in the Property;  II – Hess asked the Court to declare that Kafka abused his confidential relationship with his mother and to cancel and rescind the Kafka Deed; III – Hess asserted this count in the alternative, claiming she had spent more than $75,000 in maintenance, services, and improvements to the Property and that, unless Count I is decided in Hess's favor, it would be inequitable for Kafka to retain these benefits; she requested judgment against Kafka in excess of $75,000; and IV – Hess also asserted this claim in the alternative, requesting the Court enter judgment against Kafka in excess of $75,000, to declare the rights and liabilities of the parties, and to declare Hess is entitled to the proceeds of the sale of the Property.  (16-2789 Compl., ECF No. 2.)

Kafka timely removed Hess's state court case to this Court.  (Notice of Removal, ECF No. 1.)  On September 7, 2016, Hess filed an amended complaint (ECF No. 15) and a jury trial demand (ECF No. 16).[1]  Now pending are Hess's motion to remand (ECF No. 14) and Kafka's motions to dismiss (ECF No. 10, 17).  The motions have been briefed (ECF Nos. 13, 18, 19, 22, 23, 24), and no hearing is required, Local Rule 105.6 (D. Md. 2016).  Inasmuch as the motion to remand bears upon the Court's jurisdiction, the Court will address it first.

## II.  Standard for Remand

Because federal courts are courts of limited jurisdiction, a cause of action is presumed to lie outside of that limited jurisdiction, and the burden of establishing otherwise rests upon the

---

[1] Hess had earlier filed a jury trial demand in state court the same day she filed her original complaint. (ECF No. 3.)

party asserting jurisdiction. *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (*en banc*), *abrogated on other grounds by* 28 U.S.C. § 1446(b)(2)(B). In particular, removal statutes are to be strictly construed, and doubts regarding the propriety of removal should be resolved in favor of remanding the case to state court. *Id.*

### III. *Analysis of Motion to Remand*

Hess concedes the Court has subject-matter jurisdiction based upon diversity of citizenship and amount in controversy. (Pl.'s Mot. Remand Supp. Mem. 3, ECF No. 14-1.) She does not assert any procedural defects in the removal process. Consequently, she relies upon principles of abstention to support her request for remand.

Hess argues the Court should exercise its discretion to decline jurisdiction because she says her retooled complaint eliminated her "at law" claims and only asserted equitable claims. With regard to Count III, which is premised upon unjust enrichment, Hess's amended complaint requests the Court to "enter judgment against defendant George Kafka, Jr. in an amount in excess of $75,000 through a constructive trust or equitable lien on the Property . . . ." Similarly, in Count IV, Hess asks the Court, *inter alia*, to "[e]nter judgment against Defendant for an amount in excess of $75,000.00 through a constructive trust or equitable lien on the Property as reimbursement for those monies used by Ms. Hess to maintain and improve the Property."

Hess relies upon the Supreme Court's opinion in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), for the proposition, "It has long been established that a federal court has the authority to decline to exercise its jurisdiction when it is asked to employ its historic powers as a court of equity." *Id.* at 717. Utilizing abstention principles, federal courts may dismiss or remand cases only where the relief sought is equitable or otherwise discretionary. *Id.* at 731. However, where a complaint asserts legal claims, a court may only stay adjudication pending the

outcome of a related state court action; the court may not dismiss or remand claims at law when the court's action is premised upon abstention principles. *Id.* at 719-20.  Therefore, the question arises as to whether Hess's complaint contains any claims "at law."  After reviewing the applicable Maryland law, the Court concludes this case contained both equitable and legal claims in the original complaint—the basis for removal—and still contains both equitable and legal claims in the amended complaint despite Hess's attempt to recast all of her claims as equitable ones.

Hess alleges in Count III that, unless Count I is decided in her favor such that the Kafka Deed is declared void and that Hess is declared the rightful owner of the Property, Kafka will be unjustly enriched because of the money that Hess has expended on maintenance, services, and improvements to the Property.  In her original complaint, she asked for a money judgment in excess of $75,000.  In her amended complaint, she continues to ask for a money judgment in excess of $75,000, but tries to qualify her request as an equitable one by asking for the money judgment "through a constructive trust or equitable lien on the Property."

In Maryland, the three elements of a sustainable claim premised upon unjust enrichment are (1) a benefit conferred upon the defendant by the plaintiff; (2) the defendant's appreciation or knowledge of the benefit; and (3) the defendant's acceptance or retention of the benefit under circumstances rendering his retention of the benefit inequitable in the absence of his payment to the plaintiff for the value of the benefit. *County Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 n.7 (Md. 2000). "[U]njust enrichment is a unifying principle for all . . . cases" seeking restitutionary remedies. *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 843 A.2d 252, 278 (Md. Ct. Spec. App. 2004). "In equity, the principal restitutionary remedies are the constructive trust, the equitable lien, subrogation, and

the accounting for profits. At law, the chief restitutionary remedy is quasi-contract." *Id.* The remedies of constructive trust and equitable lien "give the plaintiff restitution by giving the plaintiff title to, or a security interest in particular property." *Id.* at 279.

A constructive trust may be imposed upon specific property "by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property. The remedy is applied by operation of law where property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it." *Wimmer v. Wimmer*, 414 A.2d 1254, 1258 (Md. 1980). "'Such a trust may arise because the property was acquired through duress, fraud, undue influence or mistake, or through a breach of fiduciary duty, or through wrongful disposition of another's property.'" *City of Annapolis v. West Annapolis Fire and Improvement Co.*, 288 A.2d 151, 155 (Md. 1972) (quoting *Siemiesz v. Amend*, 206 A.2d 723, 726 (Md. 1965)). Thus, a constructive trust is imposed to remedy the wrongful or inequitable acquisition of legal title to property. "Ordinarily, a constructive trust must be established from circumstances surrounding the inception of the transaction and not from subsequent events. Subsequent conduct is only relevant to the extent that it reflects upon the intention or purpose of the person sought to be charged at the time the transaction was consummated." *Wimmer*, 414 A.2d at 1260 n.3 (citations omitted).

The remedy of constructive trust is inappropriate to the relief requested in Count III. This count is premised upon the Court's *not* finding Kafka to have wrongfully or inequitably acquired the Property; in other words, Count III is alternatively pled in the event the Court finds Kafka to be the rightful owner of the Property but nevertheless unjustly enriched by the monies expended by Hess on the Property for maintenance, services, and improvements. Hess's expenditures

5

*subsequent* to the Kafka deed do not render Kafka's *prior* acquisition of ownership wrongful or inequitable and, consequently, cannot serve as the foundation for a constructive trust.

Similarly, the remedy of equitable lien is inapplicable to the factual scenario of Count III. "'An equitable lien is based on specific enforcement of a contract to assign property as security.'" *Pence v. Norwest Bank Minnesota, N.A.*, 768 A.2d 639, 650 (Md. 2001) (quoting *Keyworth v. Israelson*, 214 A.2d 168, 177 (Md. 1965)).

> [F]or an equitable lien to exist a specific intent to create a lien must be made manifest as, for instance, where a written instrument evidences an intent to create a lien but the instrument is imperfect in some regard, such as one with a defective acknowledgment. In the absence of a written contract construed to embody the full agreement of the parties, an equitable lien may be found only where the sum total of the circumstances of the dealings between the parties fairly may be said to evidence an intent to create such a lien.

*Equitable Trust Co. v. Imbesi*, 412 A.2d 96, 101-02 (Md. 1980). None of Hess's allegations support an inference that Kafka or even Kafka's mother intended, at the time of the 2009 Kafka Deed, to create a security interest in Hess's favor in the Property. Thus, an equitable lien is not a fitting remedy to the conduct alleged in Count III, and the only reasonable inference is that Count III requests a money judgment under a quasi-contract theory of unjust enrichment. What the Court has said about the infirmities in Count III's request for a constructive trust or equitable lien fully applies to Count IV. Although Count IV includes a request for declaratory relief, it also plainly includes a request for a money judgment under a theory of unjust enrichment.

The fact that Hess has not effectively pled a request for either a constructive trust or an equitable lien does not mean she has not pled a meritorious claim for restitution that may be remedied by a money judgment. She has done so. However, restitution by way of a money judgment is a legal claim, not an equitable claim. *See Alternatives*, 843 A.2d at 279-80 ("restitution in the form of a money judgment for unjust enrichment based on quasi-contract is

equally clearly a remedy at law"). Hence, the suit seeks equitable or other discretionary relief as well as legal relief, and, as a result, the Court cannot abstain from exercising its jurisdiction in the case by remanding the case to state court.

Because the instant case is what was formerly the parallel state court proceeding but is now removed to this federal Court, no state court action exists to which this Court should defer for decision in the present case. As a result, abstention via a stay in this case is inappropriate. Plaintiff's motion to remand will be denied.

*IV. Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## V.  *Analysis of Motion to Dismiss*

In Count I, Hess alleges Kafka abused his confidential relationship with his mother, resulting in the Kafka Deed.  Her allegations generally suggest either Kafka committed constructive fraud or that Smith executed the Kafka Deed by mistake or both.  Count II is similar.  Both counts seek cancellation and either voiding or rescission of the Kafka Deed.  Kafka's motion seeks dismissal of Counts I and II because they do not conform to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  After consideration, the Court concludes Kafka's argument has merit.

Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The "circumstances constituting fraud or mistake" include time, place, and contents of any false representation, the identity of the person making the misrepresentation, and what that person obtained.  *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir.), *cert. denied*, 135 S. Ct. 2868 (2015); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999).

Hess argues particularity is not required because she is not alleging fraud by Kafka but, instead, is alleging undue influence and mistake.  (Pl.'s Opp'n 1.)  She fails to make any argument regarding "mistake" and focuses her opposition on "fraud."  In both respects, however, her argument fails.

"Fraud is a generic term and includes constructive fraud as well as actual fraud." *Mead v. Gilbert*, 185 A. 668, 674 (Md. 1936).  In the *Mead* case, the Maryland Court of Appeals found constructively fraudulent a transaction in which a son had abused his confidential relationship with his mother and thereby gained the benefit of a land conveyance to the exclusion of his

brother. *Id. See also Tribull v. Tribull*, 119 A.2d 399, 407 (Md. 1956) (allowing evidence of confidential relationship to be introduced on "charge of fraud, actual or constructive"; noting inclusion of confidential relations in portion of treatise dealing with constructive fraud (citing Pomeroy, *Equity Jurisdiction*, 5th ed., Vol. 3, Pt. II, Ch. III, Sec. IV, § 943, 955 *et seq.*)); *Green v. Lombard*, 343 A.2d 905, 913 (Md. Ct. Spec. App. 1975) ("Fraud is a generic term and in equity embraces 'all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.' It . . . includes constructive as well as actual fraud." (Citations omitted.)).

Considering these long-standing statements of Maryland law, the Court concludes Hess's allegation that Kafka acquired his property by way of undue influence, *i.e.*, abuse of his confidential relationship with his mother, is an allegation of fraud. Consequently, Hess was required to plead with particularity the circumstances from which a confidential relationship may be inferred and the circumstances—how, when, and where—Kafka allegedly abused his confidential relationship. Equally so, Hess's complaint that Smith executed the Kafka Deed by mistake must comply with Rule 9(b). Her allegations of both fraud and mistake fall short.

As to the constructive fraud allegedly resulting from abuse by Kafka of a confidential relationship with his mother, Hess has stated legal conclusions that cannot be accepted as factual allegations. For example, Hess alleges, "Defendant abused his confidential relationship with his mother and took advantage of her shortly after Defendant's father (and Ms. Smith's husband) died. Defendant knew of Ms. Smith's pain killer dependency and of her inability to make legal decisions at this time." (Am. Compl. ¶ 26.) Also, she alleges, "Defendant abused his confidential relationship." (*Id.* ¶ 27.) As for the purported fraud itself, Hess says "On June 9,

2009, seven days after the death of her husband, Defendant knowing his mother was not of sound mind allegedly secured his mother's signature on a deed transferring the future interest of the property to him . . . . There was no immediate need for this deed." (*Id.* ¶ 12 (emphasis added).)

Hess's statements that Kafka had a confidential relationship with his mother at the time she executed the Kafka Deed are bare conclusions, as are her statements that Kafka "abused his confidential relationship." Her claim of undue influence necessarily requires proof of both elements of, one, the existence of a confidential relationship and, two, the abuse of that relationship. Hess's complaint does not rest upon sufficient factual content to permit the Court to infer the elements of undue influence. Her bald allegations as to these elements pass muster under neither Rule 9(b) nor Rule 8(a), as the latter is interpreted in the *Twombly* and *Iqbal* cases. In actuality, some of her allegations contradict the notion of Kafka's having a confidential relationship with Smith, his mother. Hess alleges "Ms. Smith had heavily relied on Mr. Smith during their marriage" (*id.* ¶ 11), "Ms. Hess assisted her sister with all of her daily needs" (*id.* ¶ 13), and "Ms. Hess continued to assist her sister until her death. Defendant was rarely, if ever, present for his mother. As Ms. Hess' [*sic*] health improved and six months after she allegedly signed the Hess Deed, she put Defendant on notice that any future contact with her would result in legal action against him" (*id.* ¶ 15). Those allegations suggest Hess had a confidential relationship with Smith up to and after Smith executed the 2011 Hess Deed. In any event, none of Hess's allegations would allow the Court to infer Smith was dependent upon Kafka, and dependence is a key element of a confidential relationship. *See Upman v. Clarke*, 753 A.2d 4, 9 (Md. 2000).

Hess argues that Maryland case law supports her position, based upon a statement in *Gaggers v. Gibson*, 26 A.2d 395 (1942): "It is firmly established as the law of this state that,

where an aged parent makes a conveyance to a child, the burden is cast upon the grantee of establishing the fairness of the transaction." *Id.* at 397.  The firmness of that dictum is cast into doubt by the later-decided *Tribull* case, which unequivocally stated, "There is no general presumption that a gift from a parent to a child is invalid.  However, if the normal situation of the parties has become reversed, so that the child is in the dominant position, the burden of establishing the fairness of the transaction may be cast upon the child."  119 A.2d at 408 (citations omitted).  Thus, the *Tribull* case makes clear that it is still up to the plaintiff to establish the existence of a confidential relationship between parent and child in order to draw into question the validity of a conveyance from parent to child.  Hess's complaint fails to plausibly allege that necessary element.

As for her claim that Smith acted by mistake in executing the Kafka Deed, Hess again relies upon conclusional allegations.  The only allegation of merit in this regard is the one that Smith around the time of her husband's death had become addicted to pain killers, which "negatively affected her sound mind and clear judgment."  (*Id.* ¶ 11.)  However, Hess fails to allege factual content allowing the Court to infer that Smith's executing a land deed with a reversionary interest in favor of her only child was somehow a "mistake."  Rather, a grantee's sole surviving parent's execution of a deed for land jointly owned by the grantee's parents for more than forty years (*id.* ¶¶ 9, 10, 26), in which she granted a life estate to herself and a remainder interest to their only child, is not suggestive in itself of a mistake by Smith; instead, it is reasonable to infer it was a logical and natural consequence of the exercise of a sound mind and clear judgment.  Further, the complaint rests upon Hess's unsupported opinion as to Smith's soundness of mind at the time she executed the Kafka Deed.  Hess's allegation of "mistake" is not founded upon any factual allegations and, therefore, fails to comply with Rule 9(b).

## VI.  *Conclusion*

No basis exists for abstention from this Court's subject-matter jurisdiction over the instant case.  Hence, the motion to remand will be denied.  The Court further concludes that Counts I and II of Hess's amended complaint fail to state a claim for relief under Federal Rules of Civil Procedure 8(a) and 9(b).  Therefore, those two counts will be dismissed.  This memorandum opinion and its accompanying order are being docketed concurrently with the Court's memorandum and order in 16-1757, in which Hess's motion to dismiss is being denied.  In conjunction with these concurrent rulings, the parties will be directed to inform the Court as to whether they have any objection to 16-1757 and this case being consolidated.  After the Court has ruled on consolidation, a date will be set by the Court for the respective defendants to file their answers.

A separate order follows.

DATED this 28th day of October, 2016.

BY THE COURT:

/s/
James K. Bredar
United States District Judge